Evans, J.
delivered the opinion of the Court.
The questions argued in this case are: 1st. Can a blind man make a will? 2d. Was this will signed by the testator, within the meaning of the Act of 1789? 3rd. Was it subscribed in his presence by the witnesses ? These I propose briefly to consider in their order.
1. It may be true, as stated in the argument by the appellant’s counsel, that there is no reported case in which it has been decided that a blind man may make a will, but the proposition is affirmed in all the elementary writers; and where-ever spoken of, is assumed as an undeniable fact. In Williams on Executors, 16, it is said a ': blind man may make a will, but certainly there is more difficulty in proving the requisites of the statute than in the case of one who can see.” In the case of Neel v. Neel, and in our own case of Reynolds v. Reynolds, the fact that a blind man may make a will is assumed, and referred to as illustrating the meaning of the requirement of the statute that the will must be attested and subscribed in the presence of the testator. This class of persons are not excepted by the Act, as infants, femes covert and persons non compos mentis are, unless they come within the last description, a proposition which I presume none will affirm. Even among those who are born blind, instances are not wanting'of the highest degree of mental culture and attainment, even in those sciences where it would seem sight was of the greatest importance: and among those who have become blind from disease or accident, are to be found some of the greatest names in ancient and modern times. I think therefore we may safely conclude that it is settled law that mere blindness does not incapacitate a man from making a will, and if no adjudged case on the point is to be found, it is because no one ever doubted it before.
2. The testator being unable to write made his mark. Is this a signing within the meaning of the statute ? Here again it is said there is no adjudged case which decides that the testator’s mark is equivalent to a signing. Such a signing to a bond or note or deed has always been held sufficient. In *303 the case of McNinch v. Charles, the will was signed by the testator’s mark, he being too weak to write his name. It is true the question was not made, but if there had been any' thing in the fact it would hardly have escaped the notice of the very sagacious and learned attorney by whom that case was conducted. The same statute requires that the witnesses should attest and “ subscribe” their names. Subscribe Avould seem from its derivation more imperiously than sign to require writing. In many adjudged cases it has been held that it is no valid objection to a subscribing witness that he made his mark. This was decided in the case of Addy v Grix, and in our own case of Adams v. Champlin it was held a sufficient subscribing within the'statute, although one of the witnesses subscribed by the initials of her name. I come, therefore, to the conclusion that the mark of the testator, which he used to represent his name, is a sufficient signing within the meaning of the statute.
1 heigh, 29.
3. Did the witnesses subscribe in the presence of the testator? It is certainly true, as said by Williams, that in case of a blind man’s will there is more difficulty in proving that the requisites of the statute have been complied with than in case of one who can see. The commentators on these words in the statirte of frauds suppose that the object in requiring the subscription of the witnesses to be in the presence of the testator, was to prevent a surreptitious will from being imposed on him, by the witnesses subscribing a different paper from what he had signed. The word presence is derived by Richardson in his Dictionary from prae and ens, being before, in the sight of, in front of, in the view of, as contradis-tinguished from absent. Webster’s Dictionary is to the same effect. In the case of a will made by one who can see, we have numerous cases construing the words in reference to the object which seems to have been in the view of the law-maker, viz: the prevention of frauds. The construction may be thus stated. There must be an actual presencethe witnesses must be within the view of the testator. There must be no intervening impediment to prevent his seeing; — but the cases do not require it to be proved that he actually did see; it is enough if from the position in which he was he could have seen them subscribe. The substance of the cases requires that the subscription by the witnesses should be within the inspection of the testator, that he might, if he choose, look at them at the moment of subscription, and thus by means of his sight prevent the practice of any fraud. In the case of a blind man we have none of the light which adjudged cases shed upon a subject. It is said by one of the Judges of the Supreme Court of Virginia, in Neel v. Neel, before referred to, that “ the circumstance that the blind man had directed his will, and when it was read to him directed attesta *304 tion to be made, it being attested in the same room in his presence and the terms of the statute complied with, although he had lost the controlling power-e£. sight, and no fraud being alleged, has been held sufficient for probate.” The fact that it was attested by the witnesses in the same room where the testator was, though good if the testator could see, yet that might not suffice in the case of a blind man. The better rule I think is that intimated in the case of Reynolds v. Reynolds, in which it is said, — “It was correctly said in the argument that a blind man may make a will; but then he must first be made sensible through his remaining senses that the witnesses subscribed in his presence, which may be done by great care.” In the case of a blind man the superintending control which in other cases is exercised by sight must be transferred to the other senses; and if they are, or may, at his discretion, be made sensible that the witnesses are subscribing the same will that he had signed, I should think it ought to suffice. This is in accordance with the charge of the Circuit Judge. He says the question submitted to the jury was, “ whether the witnesses attested and subscribed the will within the reach of the testator’s remaining senses, when he was conscious of what they were doing, and might if he chose have ascertained that they were subscribing his will.” According to the evidence, the subscription by the witnesses was within two feet of the testator. Robinson says, — “ I think the testator knew what we were doing when we signed, — he might have heard the scratching of the pen.” Dickson says the signing was “so near that the testator must have been aware of what we were doing.” “He did not touch them, but he might easily have done so.”
1 Speers, 256.
I am of opinion the law was correctly stated to the jury by the Circuit Court, and the motion is therefore dismissed.
The whole Court concurred.

Motion refused.